We're happy to hear arguments in United States v. Swain. Thank you, Judge Motz, and may it please the Court. The District Court abused its discretion. Let there be light. Thank you very much. When the District Court denied Mr. Swain's motion, it imposed an effective 5-year upward variance from the top of the guideline range it applied and an effective 10-year upward variance from the bottom of the guideline range that it applied. It justified that decision, that effective upward variance, based on factors that could not support it for two reasons. First, the guidelines range already accounted for those factors, and the case, the Sixth Circuit case, Johnson, I think does a great job of explaining that, and also Mr. Swain's PSR. Second, they were static factors. They were the nature of the offense, they were his criminal history, and those were factors that were already accounted for in the previous sentence, which was at the bottom of the guideline range. But his conduct during incarceration was not accounted for. You're right. That is the one factor, Your Honor. And it's one factor, but he had several instances of misconduct during incarceration, didn't he? He did, Your Honor. There were four incident reports. Now, I have a couple of responses to that. In my office, I've done a lot of 404 litigation. I've done a lot of compassionate release litigation. I've seen dozens, probably over 100 BOP incident reports. And for someone to be in the Bureau of Prisons for this long and to only have these four reports, you know, a totally clean sheet is basically a unicorn. A sheet this clean is basically a four-leaf clover. And as we talk about, Your Honor, in our response, our objection to the PSR designation, you know, three of those, you know, BOP reports, which sound bad on their face, one, he left a window open. One, he had a radio. One, he had some money that he was using to buy stamps. BOP calls that extortion, blackmail, because it involves currency. He was buying stamps. One incident that I think we could say is serious is that he had marijuana suboxone. That's serious. Is it 10 years serious? That is not a 10-year offense, Your Honor. Like the Sixth Circuit said in Johnson, someone does not need to be a model inmate. Someone does not need to be perfect. We have to give deference to the district court. But deference isn't blindness. This court does not need to be blind to the fact that the reason his guideline range went down is because Congress said these crack laws were way too harsh. These crack laws were racially motivated. These crack laws overpunished. This court does not need to nor really can it ignore that. This court also cannot be blind to the fact that his conduct in the Bureau of Prisons, I would say, was good, but at best would be mixed. He had no violent offenses. He took the residence. Yes, Your Honor. Your argument is good, and you can continue this way if you want. But really, you're really speaking more policy, what this court can and cannot do. The fact of the matter, the court can pretty much do what it wants to do within these guidelines. And when you read this 404 section here, the district court has a lot of discretion, and that's a big contention around the country now as to how these guidelines are to be reviewed. And that's the issue I see as important here is what is the appellate review? What is the proper appellate review when you deny a motion to reduce a sentence under this first act of section 404? That's the heart. And, again, I'm not criticizing. What you are saying now is beautiful if you want to talk to folks outside the courtroom, but I really want you to go to the meat of this. There's some important issues in this case. How would you deal with the law? Because what you are dealing with the law could affect the way in which you are seeing those things, and it may bring that result out. Do you follow me on that? Oh, very much, Your Honor. Go there for a minute. I still have 11 minutes to talk about that. First, I will say that those policy arguments, as you classified them, I was making are all through the lens of 3553A, which leads right into your question. If it's a denial, do we take the government's position and say that it is effectively unreviewable by this court, except for a statutory violation, or do we say that this court can, when reviewing the district court's discretion, look through the lens of 3553A? This court— We both agree, Your Honor, that it's an abuse of discretion. The question is— An asserted abuse of discretion. I'm sorry? An asserted abuse of discretion. If the government agreed with you that there was an abuse of discretion, I don't think you'd be here. That is true. So the question is, does this court, when reviewing the district court's discretion, can it look to the 3553A factors? And I think this court, Your Honor, resolved that, and I see skepticism. I'm happy to clarify. I just wouldn't be interested in you going back to Judge Wynn's question, which I thought was the question that we were having an argument in this case, which is, what is the standard of review? The standard of review, I would say, is the same standard, Your Honor, that this court applied in Collington, that this court applied in Chambers, that this court applied in Webb. The standard is—it is—we can call it abuse of discretion, but just like in a plenary sentencing where we call it abuse of discretion, but we also review that discretion through the lens of procedural and substantive reasonableness. I would have thought that those were two different standards. One is abuse of discretion, and the other one is the sentence procedurally or substantively unreasonable. Well, then, Your Honor, if you classify it that way, then I would say it has to be procedural and substantive reasonableness. And I think that is the sensible— You're asking for those factors, essentially substantive reasonableness? Yes, and this court— Why don't you go there? I mean, that seems to be the distinction that courts are making, and when the government's making that distinction, it's not settled as to what this review is. And that's important for us to—that's the important part of this case, is what is the appellate review? And the government does differentiate between the grant and the denial, but what is the review? And if it does, then we go back and say the district court either did or did not undertake certain things. And, Your Honor, I will say the district court first did—well, let me get—there's a tension in the statute that, you know, between—in Section 404, on the one hand, it says this is not an arithmetical correction. It says the district court shall impose a reduced sentence, which implies that this court would review whatever it does for substantive procedural reasonableness. The government relies heavily on the subsection C, which says this court need not reduce any sentence. It should be substantive reasonableness, because the distinction that the government would draw in saying this court cannot review it for substantive reasonableness would lead to a very strange result that hinge on almost entirely arbitrary factors. Let's just take Mr. Swain's case as an example. One of the things that happened—it didn't come up in this case, Your Honors, but his supervised release guidelines went from five years to four years. So what district courts do a lot in these cases, even if they don't impose a reduction, the district court may say, well, to the incarceration, I will impose a reduction to your term of supervised release. So in that case, it would be a grant, and then this court would review that for substantive reasonableness. But the arbitrary distinction, the district court's choice to do nothing as opposed to grant some very slight reduction, would suddenly cut this court and cut substantive reasonableness completely out of the process. And that's arbitrary, and it's just the only thing that could conceivably support that would be the subsection C of 404. And this court has had that battle multiple times. Right, and so can you talk about the law? I think there may be some law in the Fourth Circuit that supports your position, Collington and the most recent case, Webb. Collington, Webb, I would also say McDonald, Your Honor, which was a case that brought procedural reasonableness, took the Martin procedural reasonableness, brought it here. Webb answers this. We filed the 28J letter in Webb, and Webb didn't say, it's the distinction the government's trying to make, that we review a sentence imposed by the district court for procedural and substantive reasonableness. Webb said we review the decision of the district court whether to grant the motion for procedural and substantive reasonableness. So I would say, Your Honors, that this is actually, that's a binding case, published case by another panel, but also it makes sense. This court has made its decision. It made its decision in Collington. Chavez Mesa, the Supreme Court, left open the question of the extent to which 3553 has any role in sentence reduction proceedings. That question was left open. This court resolved that when it came to 3582C2 proceedings in Martin. In McDonald, it applied that to 404 proceedings. And the decision this court made, and it has been consistent through Collington, through Webb, through Chambers, the decision this court made was to say that substantive reasonableness review applies. That's what this court applies. And how is what the district court did here substantively unreasonable? And the district court, so if Your Honors agree, and I think, again, I would argue, but assume you're correct, then what the district court did was unreasonable. It imposed a sentence when it first sentenced Mr. Swain many years ago. It gave him a sentence at the bottom of the guideline range. It computed a new guideline range, which, again, Congress said this is the more fair guideline range. This is the guideline range that doesn't overpunish. The sentence he imposed is 10 years above the bottom of his new guideline range. What supports that 10 year, or if you want to classify it, five years above the top of the guideline range? What supports a variance of that magnitude? Well, it can't really be the factors the court already relied on. The district court also, it talked about his horrible criminal history. Your Honors, if you look at the pre-sentence report, he had, before this offense, no actual federal felonies. He had two, he had three convictions that the state of North Carolina classified as felonies, and we will not rehash Simmons here. It was not a bad criminal history. He also, you know, led the police on a car chase. He also had a firearm. Those were things that the guidelines already took into account, that guideline range from which he imposed a variance. Those were also factors that supported no more than a bottom of the guideline sentence. He left a window open in prison. He had a radio. So are we saying, yeah, I think if you have a question. Go ahead. I mean, are we saying that a marijuana violation over the course of 16 years substantively supports a sentence effectively 10 years above the sentence that the district court felt was correct to impose in 2009? And it doesn't. I understand. I'm just not so sure you can so readily discount leaving a window open while in prison, having cash in prison, having a radio in prison. Those all seem to me to be security violations while in prison. Those all seem to be things that could lead to other criminal behavior or, I mean, or escape attempts. Your Honor, they are. You are correct in as much as they are punished by the Bureau of Prisons for a reason. I would ask your honor, though, to look over the long course of how long he was in prison. This is not someone who in six months did a rap sheet of this nature. You know, he's been in 15, 16 years. So this is once every four years or so. And I would also ask your honors to take notice of the fact that he is currently incarcerated in a low security facility. The Bureau of Prisons has a sense of how dangerous they think Mr. Swain is, how much of an escape risk, how much of anything. And the Bureau of Prisons, and they do not do this lightly, you know, they have a system, sees fit to put him in a low security facility. So, your honor, I would just say, while I cannot pretend that those violations mean nothing, that's not the question we're asking here. The question we're asking, is that worth a half decade upward variance, especially in light of the fact that, if anything, the original factors the district court relied on. The thing I don't really gather from your argument is it seems to me that this is the argument that you would make to the district court. Well and good. You do a fine job on it. But we're not the district court. So we, whatever standard we view this on, we have to take account of the we give substantial weight to what the district court did. And the district court deserves deference, but that this court does not need to be blind to the reality. And again, I point to the case we cited in our 28-J letter, the Johnson case from the Sixth Circuit. You can't, your honors, actually review what the district court did. And I see my lights on. Of course we have to review what the district court did. But I just think that the argument that you're making doesn't account for the fact that we are an appellate court reviewing what the district court did. But anyway, you can address all of that in your rebuttal time. Thank you. Good morning. May it please the court. I'm Joshua Rogers, and I represent the United States. Defendant comes before this court, arguing that the district court imposed a substantively unreasonable sentence. The problem for defendant is the district court did not impose a sentence here. Its novel interpretation of the FSA runs contrary to the language of the statute and this court's interpretation of it. Statute says nothing can compel a court to reduce a sentence. And it says a court may impose a sentence. This court decided to do something else. And that word impose is really important. It's important, as Collington said, because Congress intentionally chose this word. If a court was going to reduce the sentence, then this court wanted more. And I understand you read Collington to say that in these situations we don't apply substantive reasonableness review. But in Collington, the court also denied the motion outright. So what does that do to your argument? It's the same thing as here. Well, it's actually not the same thing as here. Here, you have a sentence that was below the statutory maximum. In Collington, that was a sentence above the statutory maximum. So what the district court did was actually just by declining to reduce it, let an illegal sentence stand. It did not have the authority to do that. It had crossed hairs with Congress's intention. And I know the government relies on the one sentence in Collington that, well, the one word really that says when the government or the court decides to do what it does. You rely on that one word, when. But throughout Collington, where we say that substantive reasonableness review applies, we refer to proceedings. And this is a First Step Act proceeding. So why wouldn't substantive reasonableness apply? The difference in Collington is we had a court that was going to have to be remanded. It was going to have to reimpose a sentence. It had to start over. So when the court in Section 4 of that opinion was talking about the proceedings, it was referring to a proceeding in which a court would, in fact, have to start over. And in Section 4 of the opinion, it starts off by saying, we have a question over whether the district court explained itself. And even though it didn't resolve it, what this court did was speak to that court and say, when you go back, it better look like this. And in footnote 6, this court also said, and in case, basically, there's any confusion, it must look like this. What about our more recent Webb opinion? What does that do to your argument? I think in the case of Webb, it may say whether to grant in that particular opinion. But again, what Collington is leading us to see is that when you have… Webb is after Collington. Correct. But I think Webb is essentially reinforcing what we see in Collington, and that is, if you're going to impose a sentence, this is how you're going to have to do it. This district court didn't impose a sentence at all. Now, assuming substantive reasonableness or unreasonableness review applies, how was what the district court did here substantively reasonable when it was a 24% upward variance without any acknowledgement that it was, in effect, an upward variance? Again, the question of substantive reasonableness goes back to what did the district court do in 2009? Because that's where the court actually imposed the sentence. The defendant, the court found, was involved in prolonged drug dealing. He was a part of a conspiracy. He carried a gun on him. He was a violent recidivist, and I won't go through all the different crimes that were on his record. There were the infractions. Sorry, the infractions weren't there at the time. But now, when the court says, I'm declining, it moves into a realm of procedural reasonableness, and that does apply here. The district court does have to do a 3553A analysis. What the district court does beyond that is because of Congress's unequivocal language in the purview of the district court, unless we have a situation like Collington where the district court altogether imposes, altogether sticks with a sentence it imposed that is now illegal, is now outside its authority. I just want to be sure I understand the government's argument here. So, failing a Collington situation, the government's argument here of the standard of review is what? Where we are right now, this defendant. Procedural reasonableness, abuse of discretion, there'd be a review of the original sentence or the determination to deny the motion for procedural reasonableness and looking at that through the lens of abuse of discretion, which would include acting arbitrarily, irrationally, committing an error of law. I don't have to go through all that for the court, but that would be the question. When the court denies, did it do so in a procedurally unreasonable manner? If it did so, it would have to be remanded, not for a lower sentence, but for the court to explain why it's doing what it's doing and use the factors that this court explained in Collington. And do you believe that standard is consistent with what other circuits have done? In other circuits, actually, the overwhelming majority of circuits simply have an abuse of discretion. They're not reviewing for substantive reasonableness at all. And in many of those opinions, there's no indication that they're looking at procedural reasonableness. So here in this court, because Collington- Well, these cases are criminal cases, right? Yes, Your Honor. And the United States is a party in all those cases, right? Yes, Your Honor. And so I would think the United States would argue the same standard of review in all those cases. So why isn't the standard of review the same? I mean, courts have rejected the United States' suggestion that it must be at least procedurally reasonable, and there must be procedurally reasonableness review? Many of those courts haven't said anything. So I'm asking you what the courts are doing. Don't people in the different United States attorneys' offices ever talk to each other? I don't talk to other U.S. attorneys' offices as much, but yes, Your Honor, we keep- Well, you all work for the United States Department of Justice, and they put- You know, my husband was the United States attorney. It seemed to me that there was a lot of discussion with Maine Justice and a lot of maybe different views. But there was a drummer that we all marched to, or they all marched to. Well, they also marched to drummers in different circuits. So, I mean, we do have- Sure, the law can be different in different circuits, but what the position of the United States is would be the same. Yes, I mean, if the United States had it its way, then the only thing this court would review the district court's denial for is simply abuse of discretion. The district court would not have to look at whether- necessarily even look at 3553A factors. You know, that ship has sailed in the Fourth Circuit, and so we are looking at this through the lens of Collington, you know, recognizing that that would be ideal, the vast majority of other circuits, but that's not where we are. But what we do see, at least, like when it's- What this case boils down to is there's no sentence. Excuse me, what? There is no sentence to review. It can't be substantially unreasonable. Well, the district court had a sentence from 2009. It had the discretion under the statute to decide, do I do it, do I not? And this court said, I'm sticking with what I had. If it stuck with what it had, essentially what the defendant is asking this court to do is to review a sentence from 2009. So in instances other than where the sentence would be illegal to continue it, essentially the district court doesn't have to do anything. Well, it does have to do- It has to make a procedurally reasonable decision. What would that entail? What would be the minimum the district court would have to do to be procedurally reasonable? Well- If the determination is we will not, that there's no substantive reasonable component to this. What is the minimum the judge would do? Collington tells us that the minimum is that it must consider the defendant's arguments, the 3553A factors, the new statutory maximum. It has to accurately calculate the guidelines range, apply intervening case law, and based on all of that, determine the appropriate sentence. It's on the defendant- It has to determine that what has already been done is pretty much in order. It's not illegal. Correct. So that was my question. If once you determine there's nothing illegal that's been done, you can just walk out of the courtroom and say, well, you're just a bad person. You keep the sentence. That's the end of it. That's what you think the First Step Act- Do you think to any degree in implementing 404, there's a history here, and we cannot be devoid of the reason 404 is there under the First Step Act. It is dealing with specific types of offenses, these crack cocaine offenses in which you have this enormous disparity. Congress should recognize this and start to correct it. And start to say something ought to be done in looking at it. And don't you think at least when a judge is confronted with this, you ought to do a little bit more than say, well, everything looked legal here that's been done, and you're just a terrible person, and I'm going to interject essentially what is my personal sentencing philosophy and say, I don't want to let folks like this out, and you're just going to say it. That's sufficient? No, not at all. And first of all, I would say the Justice Department's position is this change in the law did rectify a situation that was essentially over the years created- Change was directed to the courts. Yes. And that's the problem. Many changes, you go back to the Fair Sentencing Act and other changes, you actually change sentences and you got rid of mandatory things. This one relied upon the courts doing justice. And that's kind of the problem you had before you had a sentencing act at all, is you had such a disparity in sentencing and actions that some judges would give this, some not. I mean, this case itself has it. You have this fellow who was a co-conspirator and supplier. He got 60 months. That's almost inconceivable that someone would get 320 months for doing very much the same thing and you reduce it by years and years because you say, well, this guy cooperated and he worked along with it. And I don't know the underpinnings of that, and I don't want to get into the disparities of those two, but isn't there some measure of justice that's important to judges to do your duty beyond just say, because you could get away with that on any case. But just by any case, you can say there's a reason people are in jail. And nearly, I wouldn't say, I don't know what the percentage is, but I would bet there's a number of them that got infractions, as the co-counsel indicated on the other side. This guy's been in jail 15 years. I don't want to get into when he did those offenses in jail, but if you did it in the first two or three years or four or five years, and then something changed, it seems like somebody ought to look at that and say, well, you just, I can point to these bad things and I don't have to, and I've considered your arguments and that's the end of it. Because personally, I think this ought to go this way. How do we review such a thing as that? From your perspective, you'll say you don't, because Congress gave that kind of discretion. Is that what you're saying? That is not accurate. And to return to- Tell me what is not accurate so that you can be specific as to the specific thing you're saying is not accurate. What isn't accurate is that a district court can say, I don't like you. I think you should stay in prison. A court cannot do that. You cannot see it out on the record. No one would. Right. But what it looks like, that's exactly what happened here. I mean, how do we review it? I mean, in essence, it doesn't make any difference as to whether he said it or he didn't say it. The result is the same, and it looks to be just the same. There's no substantive review as to the reasonableness of this sentence. There's a reason he's in court. He's not in court for the judge to dress him down and look to see, well, he's not a parole board. He's not there to say, you know, you've been bad the whole bit. He's there for First Step Act purposes. That has a reason why this particular individual under a covered offense has been brought in. And all you've got to do is say procedurally everything is fine. No difference at all. Well, first of all, going back to something that Your Honor said, which was that effectively what the district court did here was a rubber stamp with on top of it. I didn't mean to use the word rubber stamp, but I got your point. Go away from that and go more to what I just said. Well, it actually does go to what Your Honor said, which is, well, first of all, I do think that it's an assumption of bad faith, and it's an assumption that Congress didn't make. It's an assumption of bad faith on whose part? It's an assumption of bad faith that the district court just rubber stamped something, but really just thought, Your Honor. We're talking about review. I'm talking about when it comes to this court, the district court does something. It's not a bad faith. It could have the best faith, good faith, whatever. It's when it comes here, how do we know other than it was procedurally correct, so you don't have to do anything? The question is, was it procedurally correct? And then when we look at content, was it an illegal sentence? It cannot be reviewed for substantive reasonableness otherwise. It would be a First Step Act, and that's all you got to do, because you've been just given the judge's discretion. Some judge would say, oh, I'm going to look at other things. I'm going to do this or whatever. But what you're saying is, as long as it follows the procedural, reasonable standard and is not illegal, you can just say, go back to prison. I'd argue that it is Congress that gave the district courts this kind of discretion, and it is wide discretion. We have read that there are a number of circuits who have taken it upon themselves to interpret that particular act. It is not so consistent in standards. Judge Mott's pointed out there are different circuit views on this, right? Well, for example, Johnson, that the defense counsel brought up. In Johnson, you have a court that didn't even mention the language of nothing, and the court may impose. That's important. If the word nothing means anything, then it means the district court's sentence can't be reviewed for substantive reasonableness. Can I ask you a question? I'm not interrupting. So, if the court grants some relief, the district court, what is our standard of review? In that case, it's for procedural and substantive reasonableness. Well, why would we have a different standard if the court denies some relief? Because, as the statute says, the court may impose. Once the court has imposed, then we have something new. We have something that happened in 2022 at that point. At this point, all we have in this case, which, of course, the date is 2020, we have something in 2009. When the court in that case says, all right, I'm not happy with what I did before. I'm going to change course. I'm going to go up. I'm going to go down. In that case, there's a need for procedural and substantive reasonableness, and Collington gives us a roadmap for how a district court should look at that. Okay, so then tell me about the other situation. When the court denies, if the court still, we presume, and I don't see any evidence here to the contrary, the court acts in good faith, but it's making a judgment. And we're an appellate court, and why don't we make also a judgment about whether that is procedurally, substantively reasonable? We do that in all other kinds of cases. Because this court is constrained by the language of Congress. I mean, this is, this right here, nothing. I mean, nothing means nothing other than, you know, this case, it was actually an illegal sentence. The only other example of an illegal sentence I could think of is if the court were to consider some constitutionally prohibited factor. That would be an illegal sentence. Otherwise, you have a statute that is unequivocal in two ways. It may impose a sentence, and nothing can require it to do so. Okay, I want to go back to assume that substantive reasonableness applies. Can you respond to opposing counsel's argument that all of the factors you were talking about before, his criminal history, his poor conduct on supervision and all that, were taken into account in the first go around? So that basically he is only being sentenced now to what is in essence a 24% upward variance based on his bad conduct in prison. Can you respond to that? Well, first of all, it's not an upward variance because it's not a sentence. But assuming this court saw that outside that lens, then what you have is a district court that's looking at that defendant and saying, when I look at your history, and this includes a defendant who took a car and basically tried to take it and turn it into a weapon to kill a police officer. When I have someone like this who has now shown me that even a year before this motion, he's still up to misbehavior in prison. Right, because having the money thing was in 2019, right? And this was filed in 2020. That is correct. And then we have the using marijuana and suboxone. That mattered to the district court. And when we combine the language of the statute with the way that Collington provided a pathway for a court that actually decides to reduce, then what we have here is a situation where a district court is not bound by a review of substantive reasonableness because there was no sentence imposed at all. Therefore, we would say that the district court, when it stuck with its previous sentence, did so in a procedurally reasonable manner, which nobody's arguing about, and the district court should be affirmed. But what about the language in Collington that says it naturally follows that a substantive reasonable requirement would attach to First Step Act proceedings? It does naturally. I mean, that's accurate. If a district court does reduce a sentence, but that was said in the section in which... It didn't say, well, it attached proceedings as to reducing, denying, denying. It says First Step Act proceedings. It naturally follows that a substantive reasonable requirement would attach to First Step Act proceedings. First of all, we would say that Section 4 is applying to that district court, and the holding is applying to district courts like that court who are choosing to reduce. I mean, if this court chooses to read that language broadly, proceedings, then that obviously affects the outcome, but I think we have to look at the heart of what was happening. How else would you review proceedings? Proceedings is proceedings, whether you're granting or denying the subject of the proceeding. Correct, but it doesn't say every, like, it applies all across the board to every nook and cranny of these proceedings. It doesn't say that. It is in a section that is specifically dealing with a case in which the posture of the case has now changed. I think we look at Collington, the first part, it is addressing something very specific as well. That was not the case here. We would argue that substantive reasonable does not apply here. It would if this district court had decided to reduce it. It didn't, the language that Congress has passed to the district court, nothing can require that district court to do so. Well, that use of the word reduce, I understand where you're going with it, but isn't that the very purpose of the First Step Act to reduce sentencing disparity? Yes, but it doesn't mean that district court has to. It's just the purpose of the act, and the purpose, you bring it in for the purpose of implementing the First Step Act's purpose, that is, to reduce the sentencing disparity, and the requirement that the district court considers those thirty-five, thirty-eight factors. How is it that you then take this word reduce from the purpose and then say, well, if I don't do it, then I don't have to do anything. I don't have to reduce. Is that where you go? If you don't reduce, then you don't have to worry about the First Step Act, even though the purpose you are there for is to undertake what the First Step Act has now allowed, and that is, its purpose was to reduce sentencing disparities. The First Step Act, what it does with defendants like Bennett here, is it creates an eligibility. It does not create an entitlement to a reduction. We're not disagreeing on that, but understand there's a reason why you create an eligibility. You create an eligibility for what and why? You create it for the purpose of reducing sentencing disparities. We agree on that. That's what the First Step Act was, and for a judge to come in and not even look to any degree to the substantive nature of what's going on and simply look at the procedural aspects of it, how does that foster the purpose of the First Step Act? The purpose of the First Step Act is effectuated by the fact that there is a door that can be opened, but the district court has to open that door and say, yes, I want to move into the proceedings that involve a reduction. But in order to find that the district court or any district court that decides not to reduce has done so in a substantively unreasonable way, then we have to just write off the words of the statute. One last question on that. That is, if the district court here had enforced substantive reasonableness, could he have given this very same sentence that you are seeking to affirm today? I'm sorry, I didn't… In other words, could the judge have imposed a 320-year sentence if he had undertaken a substantive reasonableness review? Presumably so, but he didn't. So what is the problem? The problem here is that he didn't… I mean, if he can give the very same sentence that he thinks would be appropriate for all those things, why wouldn't he undertake a substantive reasonableness review? I mean, you're saying, well, he only has to do a procedure. Well, that in and of itself is cosmetic. If you can do the very same thing by undertaking a substantive reasonableness review, so what's the problem? Well, the premise of the question is that the court would have actually imposed the 324-month sentence. When we look at the court's order, it just says, I decline to do that. It was a statement that you pretty much indicated. He could do it. Not that he would, but he could. So his inclination as a judge, for whatever reason, with all those other things in mind, was to impose the same sentence. He could still do it by undertaking a substantive reasonableness review. It's not like if you undertook one review, you argued vigorously because he deserves his 320th sentence. You could do that same sentence under substantive reasonableness, couldn't you? If I'm understanding your question correctly… Let's be clear. Could the judge, if he undertook a substantive reasonableness review, could he have, could impose this very same sentence? Under the statute? Yes. Under this statute? Under these facts here. Let's put it this way. He left it just like it is, 320. Because he took a procedural reasonableness review. If he had taken procedural and substantive reasonable review, could he have implemented the same sentence? Would that have been available as one of the possibilities? My understanding is this court that reviews for substantive reasonableness, I assume that if the district court wrote an order in which it said… It just doesn't make sense. If the district court says 324 months, he can even say, I'm imposing one, but he didn't impose one. There's just no sentence to review. It's just, all there is to review under 404 is how the court went about it. That's the play on words. If you've got a judge before you, and it's one thing to say once you've already sentenced and there's no jurisdiction, and says, I didn't impose a sentence, he's got 320, but when you bring someone before you, and you can change it, and you leave it, you call it not imposing a sentence. It is imposing a sentence. It is imposing the same sentence that you did. There is some action on the district court. He's not powerless. He's not getting up and saying, I'm just not going to do anything, that's the end of it. As we all agree, he actually did something. He did the procedural reasonableness, and then he decided to impose the same sentence, or to keep it, or reimpose, call it what you want to. But he did something because it was within his jurisdiction at that point to do something different. If this court sees not changing a sentence in response to 404B as imposing a sentence… It's not a question of this court seeing. It may just be me. I'm just telling you. You can say he didn't impose it, but if it's before the judge, he's not up there as a mannequin. He can do it. He made a choice. That's what we're missing out here. You take it as though there's no choice. He has a choice, and he can choose to keep the one he is. He can choose to do something different, and the choice, by definition, is an imposition. We would agree. Choices and imposition, those are different. It's different. What we have here is a court. When a court says, I am going to stick with what I had before. I am denying the same sentence I did before. I am denying a request to change it. I think I understand what you are arguing now. The district court did not impose a sentence here. The district court's order at the end did not say, and so I am imposing the same sentence. The district court denied a motion. I'm not saying whether I agree one way or the other. With your position, I'm just trying to make clear if I understand it. Your position is where the First Step Act says, nothing in this section shall be construed to require a court to reduce any sentence. That's why substantive reasonableness only applies when such a motion is granted and a sentence is imposed, and that didn't happen here. It was a denial of a motion. Or if the court's staying with the original imposition of the sentence is illegal, like in Collington. That would be the only instance. In that case, the denial has now come into a realm in the Fourth Circuit in which that is considered a substantively unreasonable, but in a whole different sense because it's illegal. I just want to be sure that I thought you told me in the beginning of your argument, remember a long time ago, that the standard of review here you thought was abusive discretion. Correct. But you recognize that the district court here made a procedural reasonableness assessment. Correct. And so that's where that lies. Do you contend that the district court also made a substantive reasonableness assessment? Essentially, I would say that this court looks at whether it's substantively reasonable, but the district court did. We do, to be sure, but we are judging what the court did. The court did, in making its determination to deny, look through the 3553A factors, and it was in compliance with what Collington requires. So, in that sense, it was procedurally doing what was required to do, but because there is not a substantive requirement, there was not a substantive analysis necessarily going on. There was a procedural analysis. And that procedural analysis requires what we see at other sentences. It requires that because we are dealing with a whole new sentence. Well, let me try to get at this another way. Was the other side urging that there be a substantive reasonableness review, and the government was arguing that no, there isn't going to be? I'm sorry. We're talking about the sentence. We're not talking about our review of the sentence now. We're talking about the sentence itself. You mean the denial? Yes. I guess we're confusing each other, or I'm confusing you when I talk about sentence. What the district court did, whatever you want to call it, and in doing what it did, it engaged in a procedural reasonableness review. Correct. Did it also engage in a substantive reasonableness review? I know that it didn't, according to you, it couldn't do that, but is there language that looks like that? There is language that looks like, in this context, a procedural reasonableness review, but no. The district court was not looking to – it was simply deciding whether to deny. That was the question. It was not – Did the defendant ask for a substantive, calling it a substantive reasonableness review? Essentially. I would say that the defendant – And the government rejected that. The government opposed that. The government did. Did the government oppose the procedural reasonableness review? I'm sorry. Did the government oppose the procedural reasonableness review? Not after the fact, when you're in the district court. The government opposed the defendant's request in the district court. The government asked that the request be denied. For a procedural reasonableness review? The district – the government did give reasons that would support the district court's determination that it should be denied, and those reasons were – the district court took those and made a procedural reasonableness review of it. I mean, I'm sorry, the district court made a review of it, and it did what it has to do. When it denies, it can't just say, I'm not doing this. The court took what the United States and what the defendant had in front of them, and the district court said, I'm looking on this. This is a denial. I am stepping away from this, and I'm leaving 2009 where it is. So the court – did the court consider the 3553A factors? As it should have in this context. Did you say, is that a yes or no? Yes, as it should have. The district court – it would be an illegal sentence because it would be procedurally unreasonable if the district court had just said, you know what, more things – you know, this has just stayed the same as it was before, and I'm done. That would have been an illegal sentence. That would be procedurally unreasonable. I'm sorry. And the district court instead did a very thorough review that was procedurally reasonable, and the statute leaves no open door to review it. You don't need a thorough review. You simply need to follow the text of what are procedural reasons. You simply need to just say in the record, I've looked at the record, I've looked at the arguments, and I considered the factors. That's all you need to say. I mean, the whole business of the thorough review, it may or may not be there, but for purposes of when it comes to this court, all we know is you said you considered the factors. This is exceptional, and, you know, Congress assumes good faith. But it is true, isn't it? I mean, you say thorough review, which is a loosely used term. The fact of the matter is when it comes to here, normally we like to see what it is you did. We trust the district court judges, but, you know, we work for the public. We work – we want to make sure the system looks like it's fair. At least there's something in this year here to say that you did what you're supposed to do. Beyond simply saying, well, I considered all the evidence in this case, and the parties' arguments, and 3553 faith factors, I'm just going to leave it like it is. Well, the unequivocal indicia of fairness here is Congress's language in which it entrusts district courts. It will be, but I'm just saying that is the end result. I don't agree that that's the end result, because I have to assume that Congress entrusts the district courts with this for a reason, and I do believe that if this court veers out of the language – I want to get to the Congress entrusting district courts with our responsibility in terms of reviewing the work of district courts. And to do it, if all you do is say it, then what do we review, and how do we review it? That's all. I get you on the point. Congress can do it now. If you just want to make this court just do it, that's a whole different thing. But remember, the purpose of the First Step Act is to reduce sentencing disparities in crack cocaine. That's the purpose. And somewhere, even if the strongest textualist has to agree, you ought to at least pay attention to the purpose of the act, at least as a reason you do stuff, other than we're just doing it so that it looks good. And while that is the purpose, the language of the statute is even then, nothing can require a district court to do it. Your Honor, we would just close by saying that if this court determines that this denial can be reviewed for substantive reasonableness, it is our argument that it will be a complete departure from the statute and require something different than what is in the plain language of it. If there are no further questions, I'll take my leave. Thank you. After asking this court to affirm the district court. Thank you. Thank you, Your Honors. To answer your question about the government's position, Joint Appendix 216 and their response, they say the government agrees that in determining whether to reduce the sentence of a qualifying defendant, a court should consider the sentencing factors set forth in 3553A. Joint Appendix 233, the district court says it does consider the 3553A factors. It did. And that's because the government and because the district court had been reading this court's precedents. And I think my colleague made a point that it's the court. Reassuring that somebody reads. My colleague made a point that I think crystallizes this. In some other circuits, the government's preferred reading of the first step back has been adopted. That is not this circuit. The government agrees that procedural reasonableness is required. The only reason you have procedural reasonableness is to give the appellate courts the opportunity to review 3553A. You cannot have half a loop. You cannot have empty formalism procedure. And the government agrees. It wishes, I think. Where in the district court's order did it impose the sentence? The district court's order. So, Your Honor. When I read it, it denies a motion. It denies a motion. So, this court reviews the denial of that motion for substantive reasonableness from the sentence imposed. And why is that, Your Honor? Because this is not a typical motion. Criminal sentencing is different than what courts do. This comes from 3582. This comes from the federal sentencing statute. And this court recognized, Martin and McDonald, and this court recognized in Collington, that these proceedings, these 3582, either C1 or C2 proceedings, are different than typical motions. This was not a party, you know, asking to write a motion too long or asking to file something out of time and you review it for discretion. This was, and Congress said, this was a different in kind proceeding. So, yes, Your Honor, the government wants to argue that because the district court didn't grant anything, this court is hamstrung. That was the argument it lost in Collington. That was the argument it lost in Martin and then McDonald extending that to 404. And Judge Motz, I think you made a very good point that having this court review grants for full substantive reasonableness, but to be effectively unable to review denials and the sentence that remains after a denial would be pointless formalism, would draw an arbitrary distinction that makes no sense. Let me tell you why this is confusing to me. It seems as though, government agrees, both sides agree, that if the sentence, if something is granted, imposed, then there's a less deferential view to the court that has granted this defendant relief. Now, are you really going to scrutinize what he did? But if you don't give him the relief, if you deny him, it's a heightened deference. In other words, it's easier to not give him relief than it is to give him. That makes no sense to me. I can't figure that out. Why would we give greater review to the granting unless we were against the granting of it? In other words, that's against the granting when the purpose of the act is to reduce it, when you follow the very purpose to reduce it, to grant relief. But if you don't grant it, then it's a higher level of scrutiny, it's a higher level of deference that you give the trial judge. In other words, you don't even look at it if he doesn't give it. How does that make sense? I obviously think it did not, Your Honor. Well, I think it does you good if you could figure out why the government espouses that argument, other than just to win, and then explain why you don't think it makes sense. The government espouses that argument because I think you crystallized it well, Judge Thacker. The government wants to say that when Congress created this statute, it gave district courts the ability to grant or deny the motion. And if it's denied, then this court only reviews it for illegality or, as you said, a constitutionally impermissible fact. Because the statute says nothing in this section shall be constricted to require a court to reduce any sentence. And that was the argument that the government made in Collington. And I understand the distinction they're making. They're saying Collington was an illegal sentence. But if we take that language, you know, the court in Collington fully denied the motion. Nothing in this act shall be construed to require a district court to do it. That was the government's argument in Collington. Yes, but my colleague just pointed out to you the difference. Okay, nothing in the act requires it, but common sense requires that an illegal sentence be dealt with. Your Honor, I would say that this court in Collington didn't rely on common sense. This court in Collington said that even though that language gives the district court's discretion, that discretion is constrained. And as the court in Collington went on, it explained that the constraints on that discretion, or as Judge Thacker pointed out, proceedings, not just sentences granted, but the constraint on proceedings involves procedural and substantive review. Because sentencing is different in kind than the other sorts of work-a-day motions. Is there any case on any circuit where substantive review was applied to a First Step Act denial like this, without the sentencing illegal? Not, Your Honor, that I have found, which I think is probably not out there. I obviously had a strong incentive to find that. But I think this flows so naturally from Collington and so naturally from Martin's-McDonald. And again, the government conceded that procedural reasonableness review does apply. What would be the point of requiring the district court to address arguments through 3553A, to make 3553A determinations, just to put words on a piece of paper that in the government's view this court would be powerless, forbidden from considering? It just does not make sense. This court effectively, though I would be happy to get a published opinion from this court, and I'm sure everyone would in terms of really clarifying it, but Collington, Martin, McDonald, Webb, this decision has been made. And yes, this exact procedural framework has not arisen, but it would throw out the entire framework on which this court has been consistently building its Section 404 jurisprudence, to suddenly hear at the very last minute stop and say, actually, you can't do this. And as Judge Wynn pointed out, it would give district courts very perverse incentives. It would say, if you give this guy nothing, then you're unreviewable. Okay, would you mind going to 233 of the joint appendix? Yes, Your Honor, I have it open right now. I don't know whether the government made this argument or not, because I guess I wasn't understanding totally what the government was saying in some respects. But it seems to me that the district court says it's reviewing the parties' arguments, the new advisory guideline range, and all relevant factors under 3553. And it goes through a bunch of cases. And is there not an argument that the district court is there making a substantive and procedural analysis of the legitimacy of doing what it's doing? Now, maybe you think it's wrong. What I'm really asking you is, what do you think the district court is doing on those two pages? I think the district court is, in making its decision whether to grant or deny, reviewing the 3553A factors. So it's done the procedural? It has done it procedurally. Okay, now, then it goes on in light of Swain's terrible criminal conduct, serious criminal record, poor performance, misconduct while incarcerated, the need to promote respect for the law, the need to deter, the need to incapacitate Swain before he declines to reduce his sentence. So there's more, and there's language before that, spotty work history, poor supervision, poorly on supervision. That sounds to me like substantive reasonableness review. Yes, Your Honor. If the district court had reviewed this case in the way the government sort of is trying to categorize it, it could have said, I've looked at Mr. Swain's case. The sentence he has is within the correct statutory range. Therefore, I need do nothing else. Right. And he didn't because the district court has read this court's precedents and understood that it needed to engage in this substantive reasonableness review. So what you say is not that the court did not engage in a procedural and substantive review. The procedural review, I gather, you think is sufficient. You don't like it, but it's sufficient. But the procedural, but the substantive reasonableness review you regard as inadequate. And I do, and if I may briefly explain to this court, because Your Honors, we're all saying, look, we always tend to affirm these sentences substantively. So here quickly is why this really does require this court's intervention. First, we have information that we do not have at a plenary sentencing, which is that almost all of these factors, except for prison conduct, led this district court, this district judge, to impose a bottom-of-the-guideline sentence. Secondly, this is not just any statute. This is a particular proceeding that Congress created because the crack laws were racist and because the crack laws overpunished. And the district court said, forget about it. It's giving an upward variance over that. Third, unlike in a plenary sentencing, these factors, his history, are so stale. He led the police on a car chase during the Bush administration. That was bad. That was also a very long time ago. He has taken the full drug treatment program in the Bureau of Prisons since then. He has stayed employed. He's taken advanced anger management classes. He is a 55-year-old man who has, as Your Honors pointed out, a 24% upward variance because of the stupid things he did 15 years ago. So I see my red light has been on for a while. And I understand this court's, you know, heartburn at wanting to step in the shoes of the district court. But this proceeding, for the reasons I just gave, is different in kind. And Johnson from the Sixth Circuit points out we don't just defer to a district court because it's a district court. These factors were accounted for in the guideline range. These factors were accounted for in his previous sentence. And the fact that he had some marijuana and a radio and an open window does not mean a half decade of his life upward variance was substantively reasonable. So this court should, Your Honors, apply substantive reasonableness review. And then applying that review, we would ask this court to remand to the district court to effectively, you know, not impose this upward variance. Thank you very much. Thank you, Your Honors. I'm going to ask the clerk in a moment to adjourn court for the day. We appreciate your arguments, as you both know. We usually come down and shake hands in the present state of the health situation in the United States. We aren't doing that. We're hoping we'll do it the next time we're in Richmond. But we do appreciate your arguments. Thank you very much.
judges: Diana Gribbon Motz, James Andrew Wynn, Stephanie D. Thacker